UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY BROWN,

                Petitioner,           Case No. 1:15-cv-14419
                                                  Hon. Thomas L. Ludington

v.

TONY TRIERWEILER,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas corpus petition filed by a state prisoner under 28 U.S.C. § 2254. Petitioner, Terry Brown, is serving a sentence of 20 to 40 years and lesser concurrent terms for his Wayne Circuit Court jury trial convictions of first-degree home invasion, MICH. COMP. LAWS § 750.110a, assault with intent to commit unarmed robbery, MICH. COMP. LAWS § 750.88, and aggravated assault, MICH. COMP. LAWS § 750.81. The petition raises four claims: (1) Petitioner's confrontation rights were violated when he was denied the opportunity to cross examine the individual performing DNA analysis on items found near the crime scene; (2) Petitioner was denied the effective assistance of counsel at trial; (3) Petitioner was denied the effective assistance of counsel on appeal; and (4) Petitioner was denied a fair trial due to the cumulative effect of trial errors. The Court will deny the petition because Petitioner's claims do not merit relief. The Court will also deny Petitioner a certificate of appealability and deny him permission to proceed on appeal in forma pauperis.

**I.**

The charges against Petitioner stem from allegations that he and an accomplice broke into an elderly couple's home on the evening of November 27, 2009, and attempted to rob them.

At Petitioner's trial Gerald Abel testified that on the evening in question he was taking the garbage outside to his garage when he heard footsteps behind him. Dkt. 6-11, at 30. Abel was tackled to the ground, and he felt hands pinching his nose and covering his mouth, preventing him from breathing. *Id.* at 35. Abel then heard his neighbor jump over the fence, causing the perpetrator to run off. *Id.* at 37.

Abel saw another man emerge from the back door of his home. Abel's neighbor, Mike, grabbed this second man, pulled him to the ground, and yelled for someone to call 9-1-1. *Id.* at 39. The second man broke free and ran away, but his leather jacket was pulled off. *Id.* at 40.

A year after the incident, at the preliminary examination, Abel identified Petitioner's voice as the voice of the man who tackled him. *Id.* at 41–48.

Dorothy Abel testified that on the evening in question she was upstairs at her home when she heard voices on the first floor. She walked downstairs and saw a stranger standing in the living room. *Id.* at 65–66. The man told her to lie down on the floor, and then he pushed her to the floor when she refused to comply. *Id.* at 68. The man ran out the front door. *Id.* at 69. She ran to a neighbor's house and told them to call 9-1-1. *Id.*

Michael Ford, the neighbor, testified that he came to Mr. Abel's assistance. His testimony largely corroborated Abel's account of the attack. *Id.* at 70–75.

Det. David Loch from the Grosse Pointe Park Police Department testified that he arrived at the scene after the incident. He spoke with the victims while other officers collected several articles of clothing lying on the ground. *Id.* at 83. There was a brown cloth glove found between

the garage and the house. *Id.* at 85. Police also recovered a leather jacket from the same general area. Loch found a hooded sweatshirt in front of a house down the street. *Id.* at 87. He retrieved a left handed glove and placed it in an envelope using a latex glove. *Id.* at 89. Loch found the matching glove a few houses away in the direction the witnesses said the assailants ran. *Id.* at 92. Following DNA testing on one of the gloves, Det. Loch obtained a search warrant for Petitioner's DNA. *Id.* at 97.

Andrea Halvorson, an employee of the Michigan State Police, testified as an expert witness on DNA identification. Halvorson testified that articles of clothing submitted to her lab were tested for possible DNA. Samples were taken from these items and sent to Bode Technology Group through a federal grant because of the Michigan State Police's backlog. DNA profiles were generated by Bode, and the lab prepared a report and sent it to Halvorson. *Id.* at 101–04.

Halvorson entered the profiles from the Bode report into the Michigan State Police data base. After entering the data, a match was generated from one of the DNA profiles obtained from one of the gloves with a person named Terry Spann. Halvorson subsequently determined that Terry Spann was an alias for Petitioner. *Id.* at 105. Halvorson then requested that the Grosse Pointe Park Police Department obtain a sample DNA from Petitioner. After receiving the known sample, she performed a comparison analysis with the results submitted by Bode from the glove. *Id.* at 106–111.

Defense counsel then interposed an objection, asserting that Halvorson's testimony regarding the Bode report was hearsay and a violation of Petitioner's confrontation rights. *Id.* at 112. Defense counsel conducted a voir dire examination of Halvorson. She confirmed that she did not know what protocols Bode followed in their analysis, nor did she know whether the

processes they followed were performed correctly. Halvorson testified that she merely received a written report from a person she did not know. Halvorson further testified that she relied on Bode's results in make the comparison with Petitioner's known sample. The trial court overruled the objection, and it found that the objection went to the weight and not admissibility of Halvorson's testimony. *Id.* at 113–134.

Halvorson went on to testify that she identified Petitioner as being the source of the DNA on the glove by comparing the DNA profile contained in the Bode report with the known sample taken from Petitioner. The swab from the right hand glove showed three possible donors, one major and two minors. Major DNA types matched the known samples taken from Petitioner. *Id.* at 137–140.

On cross-examination, Halvorson conceded that if there was an error with Bode' profile work it would affect her result as well. It was also determined on cross examination that the gloves were in mismarked bags, the right glove was in a bag labeled left glove and the left glove was in a bag labeled right glove. *Id.* at 159.

David Hiller testified that he was the Chief of Police for the Grosse Pointe Park Police Department. Hiller testified that he took a statement from Petitioner following his arrest. Petitioner gave him a voluntary statement. *Id.* at 181–82. In his statement, Petitioner admitted to being with other people when it was decided they would go "hit a lick." Petitioner said they were looking for homes that had large screen televisions. Petitioner admitted to being in the back yard next to the victims' home when other members of his group committed the crime. Petitioner denied assaulting Mr. Abel. *Id.* at 175–83.

Based on this evidence, the jury found Petitioner guilty of the offenses indicated above. Following sentencing, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate briefs raised the following claims:

> I. Mr. Brown was denied his constitutional right to the confrontation of his accusers when the prosecution failed to produce a representative from Bode Technology Group to testify at trial regarding their DNA profile analysis and the trial court abused its discretion in allowing this hearsay testimonial evidence over the objection of defense counsel.
>
> II. Defendant was denied the effective assistance of counsel, a violation of his 6th Amendment right, when trial counsel failed to investigate the nature of the DNA evidence used by the prosecution to bring charges against Defendant, thus rendering Defendant impotent and unable to refute the scientific evidence where trial attorney failed to petition the court for an expert witness.

Pet. at 2, ECF No. 1.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Brown*, No.308368, 2013 WL 1629430, at *1 (Mich. Ct. App. Apr. 16, 2013). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Brown*, 834 N.W.2d 498 (Mich. 2013) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. Mr. Brown was denied his Sixth Amendment right to the effective assistance of appellate counsel where counsel failed to request an evidentiary hearing to expand the record for review on his claim that he was denied the effective assistance of counsel at trial; and for failing to raise the additional claims or ensure that his client had the necessary record/transcripts to allow for meaningful review of any other claims which may merits review, thereby establishing the cause and prejudice of MCR 6.508(D)(3)(a)&(b).
>
> II. Defense counsel was constitutionally ineffective for failing to suppress the DNA profile obtained from the brown gloves when it was determined there was a

significant break in the chain of custody and the evidence which was offered was not what the prosecution claimed.

III. Mr. Brown's Fourteenth Amendment right to due process was violated where the prosecution knowingly admitted perjured testimony concerning the DNA sample used to determine the suspect's identity, and, failed to disclose the DNA evidence produced by Bode technology in violation of Brady v. Maryland; appointed counsel was ineffective for failing to move for suppression of all DNA evidence.

IV. Defendant's due process rights were violated through the use of a highly suggestive pretrial voice identification procedure and appointed counsel was ineffective for failing to move for suppression of this identification. U.S. Const. Amend. VI & XIV.

V. Defendant was denied his due process right to sentencing based on accurate information where offense variable 7 was mis-scored, therefore he must be resentenced. U.S. Const. Amend. XIV.

Pet. at 3–4.

The trial court denied the motion for relief from judgment, finding that review of the claims was barred because some of the claims had been raised on direct review, Petitioner failed to demonstrate cause and prejudice for failing to raise the other claims as required by Michigan Court Rule 6.508(D)(3), and because the claims lacked merit. See Dkt. 6-17.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Rule 6.508(D)(3), and finding that Petitioner's ineffective assistance of appellate counsel claim was without merit. *People v. Brown*, No. 324396 (Mich. Ct. App. Jan. 30, 2015). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but it was denied under Michigan Court Rule 6.508(D). *People v. Brown*, 871 N.W.2d 179 (Mich. 2015) (table).

**II.**

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III.

**A.**

Petitioner first claims that his rights under the Confrontation Clause of the Sixth Amendment were violated when he was denied the opportunity to cross examine the analyst from Bode laboratory who performed the DNA testing on the gloves found at the scene of the crime. The Michigan Court of Appeals found that Petitioner's confrontation rights were not violated because the results of Bode's test were not offered for the truth of the matter asserted, *Brown*, 2013 WL 1629430, at *3, and because the Bode report was not a "testimonial" statement for Sixth Amendment purposed. *Id.*, at 3–4. This determination was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law.

The Confrontation Clause of the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that out-of-court statements that are "testimonial" in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. 541 U.S. 36, 68 (2004). The Confrontation Clause is not implicated, however, when the hearsay at issue is non-testimonial. *See Davis v. Washington*, 547 U.S. 813, 823–26 (2006). The proper inquiry in deciding whether a statement is testimonial is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2005).

In *Melendez-Diaz v. Massachusetts*, the Supreme Court extended *Crawford's* holding to certain forensic reports, holding that the admission of a forensic analyst's certificate of analysis without in-court testimony by the analyst violated a defendant's right to confrontation. 557 U.S.

305, 321–22 (2009). In that case, the trial court admitted the notarized analysts' affidavits stating that substances recovered from the defendant contained cocaine, but the analysts did not testify in person. Describing the analysts as actual "witnesses" and the certificates as "functionally identical" to their "live, in-court testimony," the Supreme Court concluded that, without cross-examination, the defendant was precluded from ascertaining "what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed." *Id*. at 310–12. Accordingly, the defendant was entitled to be confronted with the analysts at trial, unless the prosecution showed not only that the analysts were unavailable but also that the defense had a prior opportunity to cross-examine them. *Id*. at 311.

Subsequently, the Supreme Court determined in *Bullcoming v. New Mexico*, that a certified laboratory report of a forensic analyst who tested the petitioner's blood alcohol level was testimonial because it served the purpose of "'establishing or proving some fact' in a criminal proceeding," 564 U.S. 647, 664 (2011) (citation omitted), and the prosecution could not bypass Confrontation Clause protections by offering for cross-examination another laboratory technician who was merely familiar with the procedure but did not conduct the actual test. 564 U.S. at 663–65.

*Melendez-Diaz* and *Bullcoming* are distinguishable from the present case. There are subtle yet significant distinctions between the type of reports and testimony at issue in those cases from what was at issue in Petitioner's case. These differences were noted by the Supreme Court's plurality decision in *Williams v. Illinois*, 132 S. Ct. 2221 (2012). In *Williams*, a case strikingly similar to the present case, the plurality held that an expert's testimony premised on a DNA report generated by another laboratory did not violate the Confrontation Clause on two

alternate grounds: (1) the report was not being offered for its truth but only for the limited purpose of explaining the basis of the expert's conclusion; and (2) even if the report had been offered for its truth, it was not a testimonial statement because it was not produced for the primary purpose of accusing a targeted individual. In reaching this conclusion, the *Williams* Court noted that the DNA report at issue, which concerned the generation of DNA profiles from unknown sources, was "very different" from the reports in *Melendez-Diaz* and *Bullcoming*, and observed that "[t]he technicians who prepare a DNA profile generally have no way of knowing whether it will turn out to be incriminating or exonerating - or both." *Id*. at 2243–44.

In light of *Williams* and the similarity in which the Bode report was used in this case, Petitioner's claim must fail. Unlike the report in *Melendez-Diaz*, which was admitted into evidence without any in-court testimony, Halvorson testified regarding the DNA comparison performed in this case, and she was subject to cross-examination. To the extent a portion of Halvorson's testimony was based on laboratory work of the nontestifying technician at Bode who extracted the DNA from the gloves found at the crime scene, as an expert, it was permissible for Halvorson to include reference to hearsay matters upon which she relied in performing her own work. *Williams*, 132 S. Ct. at 2228 ("When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause."). *See also Hill v. Virga*, 588 Fed. App'x 723, 724 (9th Cir. 2014) ("The Supreme Court has not clearly established that the admission of out-of-court statements relied on by an expert violates the Confrontation Clause.").

Additionally, in contrast to the blood alcohol report in *Bullcoming*, which included a purported testimonial certification to prove the truth of the matter asserted (i.e., the blood alcohol level of the defendant), the DNA test performed by Bode was referred to for the limited purpose of determining whether the results from that test matched Petitioner's known DNA profile, which was determined from an analysis directly performed by Halvorson. That is, unlike in *Bullcoming*, the Bode report was not, by itself, dispositive of Petitioner's guilt—it merely generated the DNA profile of an unknown donor.

Accordingly, in light of *Williams*, the decision of the Michigan Court of Appeals was not contrary to, and did not involve an unreasonably application of, clearly established Supreme Court law.

**B.**

Petitioner's second claim asserts that he was denied the effective assistance of counsel at trial on five grounds. The first two grounds were presented to the state courts during Petitioner's direct appeal in his pro se supplemental briefs. The second three grounds were presented to the state courts during Petitioner's post-conviction review proceeding. Respondent asserts that the first two grounds were reasonably rejected on the merits by the Michigan Court of Appeals and that the remaining grounds are barred from review by Petitioner's procedural default. The Court agrees that the state court reasonably rejected the first two grounds. The Court will address Petitioner's defaulted claims below.

In *Strickland v. Washington*, the Supreme Court set forth a two- prong test for determining whether a habeas petitioner's counsel was ineffective. 466 U.S. 668 (1984). First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the

Sixth Amendment. *Id*. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id*.

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. And it is the petitioner who bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

Because the state courts rejected this claim on the merits, however, it is beyond the scope of review for this Court to evaluate Petitioner's claim de novo under the *Strickland* standard. The issue here is a narrower one. The question is whether the conclusion reached by the state court falls within the bounds of reasonable adjudications of Petitioner's claims—a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, "because the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." 556 U.S. at 123.

The Michigan Court of Appeals reasonably found that Petitioner has not shown prejudice for either of the allegations of ineffective counsel raised on direct appeal. Petitioner does not state any plausible challenge to the accuracy of the DNA evidence admitted at trial, and he did not make any proffer that an expert would have testified in his favor regarding Bode's testing of the gloves. Instead, Petitioner merely states that "[a]n expert witness would have been capable of providing an even assessment of the case to the court and members of the Jury, as well as providing an independent assessment of the evidence/report introduced by Body Technology Group and the subsequent testimony of the Michigan State Crime Lab Analysis, Andrea Halverson." Dkt. 1, at 8.

Petitioner's allegations, therefore, involve nothing but unsubstantiated conjecture. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689). Moreover, Petitioner has not demonstrated a reasonable probability that further testing would have revealed favorable evidence. Petitioner admitted to police that he was one of the men at the scene. His defense was that other men were the ones who committed the crimes, and he was merely present. The implication was that his DNA could have been found on items found near the scene without necessarily meaning that he committed the crimes. Stated simply, the Michigan Court of Appeals did not unreasonably adjudicate the allegations of ineffective assistance of trial counsel claims raised on direct appeal based on the record evidence.

**C.**

The remainder of Petitioner's claims were raised in his motion for relief from judgment and the appeal that followed. The trial court found that the new claims were barred from review by Petitioner's failure to show "good cause" and "actual prejudice" for failing to raise them on direct review as required by Michigan Court Rule 6.508(D)(3). The Michigan Court of Appeals similarly relied on Rule 6.508(D)(3) to deny relief. Respondent asserts that review of these claims is barred by the state court's reliance on this procedural rule as the grounds for decision.

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). In addition, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729–30(1991).

Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MICH. CT. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last

reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The trial court and the Michigan Court of Appeals specifically referred to section 6.508(D)(3) as their rationale for rejecting his post-conviction claims. Reliance on this rule as a basis for denying relief constitutes a procedural default of the claims raised *See Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007). *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, as here, federal habeas review of the claims is barred unless the prisoner can demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006). The miscarriage-of-justice exception may only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *Id*. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has shown no cause for his failure to comply with the Michigan state procedural rule. Petitioner asserts that his appellate counsel's failure to raise his post-conviction claims constitutes cause for failure to raise his claims on direct appeal. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (noting that "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to

establish cause). In order to constitute cause for a procedural default, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment. *Id.*

Petitioner has failed to demonstrate that his appellate counsel was ineffective for omitting the defaulted claims. To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).

Petitioner's unraised claims are not clearly stronger than the claim that appellate counsel raised on direct appeal. Petitioner argues that his trial counsel should have moved to suppress a suggestive pre-trial voice identification procedure, and he should have moved to suppress the DNA profile generated from the gloves because of an alleged break in the chain of custody. He notes that the bags containing the gloves contained incorrect left/right hand labels for the gloves they contained. But as before, Petitioner has proffered no evidence, either to the state courts or to this Court, that these arguments had any merit. Petitioner finally asserts that the cumulative effect of various trial errors rendered his trial fundamentally unfair in violation of due process. But this claim is not even cognizable on federal habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

Finally, Petitioner has not presented any new, reliable evidence to support an assertion that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House*, 547 U.S. at 536. Because Petitioner has not presented any new reliable evidence that he is innocent of the crimes for which he was convicted, a miscarriage of justice

will not occur if the Court declines to review the merits of Petitioner's procedurally defaulted claims. See *Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). The claims Petitioner raise in his state post-conviction review proceeding are therefore barred from review.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal of this decision may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that Petitioner's claims do not merit relief. Therefore, the Court denies a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED**, that the petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED**, that a certificate of appealability and permission to appeal in forma pauris are **DENIED**.

Dated: November 2, 2016                    s/Thomas L. Ludington
                                                                               THOMAS L. LUDINGTON
                                                                               United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 2, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager